JAMES E. MOORE *et al.* Appellants, *vs.* THE DERING COAL COMPANY, Appellee.

*Opinion filed October 26, 1909.*

1. PRACTICE—*general verdict inconsistent with special findings cannot stand.* Where the answers returned by the jury to controlling questions of fact submitted to them under section 79 of the Practice act are inconsistent with the general verdict of guilty, it is the duty of the court to enter judgment on the special findings.

2. MINES—*when recovery cannot be had for violation of statute.* In an action counting upon the defendant's willful violation of the provisions of the Mines and Miners act requiring flanges on the sides of the drums of engines used for hoisting men, a special finding that the opening into which plaintiff's intestate fell when the rope slipped off of the flangeless drum of the hoisting engine was not used for the purpose of ventilation or escapement or for the hoisting or lowering of men and material in connection with the mining of coal is inconsistent with a general verdict of guilty and precludes a recovery. (*Spring Valley Coal Co.* v. *Greig,* 226 Ill. 511, distinguished.)

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Franklin county; the Hon. J. R. CREIGHTON, Judge, presiding.

HICKMAN & MOORE, and THOMAS J. LAYMAN, for appellants.

DENISON & SPILLER, and W. H. HART, (GEORGE C. MASTER, of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellants, James E. Moore and Missouri E. Moore, his wife, brought this suit in the circuit court of Franklin county against the appellee, the Dering Coal Company, under section 33 of the act in relation to mines and miners, for damages caused by the death of their son, Charles E. Moore, while working for appellee in sinking an air-shaft.

The ground of liability alleged was a willful violation of clause *c* of section 4 of said act, in failing to have flanges attached to the sides of the drum in connection with the engine used for hoisting the men. There was a trial of the issue formed under a plea of the general issue, and the following facts were proved:

Defendant was preparing to open a coal mine, known as mine No. 18. The main shaft had been completed down to a vein of coal which was about 498 feet below the surface, and the shaft had been continued, as was necessary, through the vein of coal. The material taken from the shaft in the excavation, including the coal at the bottom, had been taken out and elevated in a bucket, but no coal had been taken out of the shaft except what was necessary to make it. The bucket was the usual and regular means of bringing out rock and earth in sinking a shaft. There was a hoisting engine at the shaft, but no cage or any other part of the operating equipment had been installed. The defendant was also sinking an air-shaft in compliance with section 3 of said act, which, when completed, was to be used for an air or escapement shaft and for ventilating the mine. A temporary engine had been installed at this air-shaft and was being used to make the excavation. The shaft had been sunk to a distance variously stated by witnesses from 440 to 470 feet. The men were blasting and taking out limestone rock, which was elevated in a bucket. The men went up and down in the bucket, which was lowered by means of the engine and a drum, and the shaft had not been sunk to the vein of coal. The drum had no flanges on the sides, and when Charles E. Moore and another workman were being let down into the shaft, the cable slipped off the drum and caused him to lose his hold. He fell to the bottom of the shaft, about 400 feet, and was instantly killed by the fall.

The jury returned a general verdict finding the defendant guilty and assessing the plaintiffs' damages at $3000.

They also returned answers to questions of fact submitted to them under section 79 of the Practice act, by which they found that the opening in the ground at which the engine in question was being used at the time Charles E. Moore was killed was not being used for the hoisting and lowering of men and material in connection with the mining of coal; that it was not being used at that time for ventilating any coal mine of the defendant; that it was not being used for an escapement shaft of any coal mine of the defendant, but that such opening, when completed, was to be equipped and used as a shaft for the purpose of an escapement or ventilation or for hoisting and lowering men and materials in connection with the mining of coal. The court, on motion of the defendant for judgment on the special findings of fact, found that such findings were inconsistent with the general verdict and controlled the same, and accordingly entered judgment thereon for the defendant. An appeal was prosecuted to the Appellate Court for the Fourth District, where the judgment was affirmed, and the cause has been brought here by a further appeal.

The question to be decided is whether the court erred in entering the judgment for the defendant upon the special findings of the jury, which were in harmony with the undisputed evidence in the record. Those findings were, in substance, that the death of Charles E. Moore was caused during the construction work preparatory to opening a coal mine, and that the shaft was not in use in connection with the mining of coal or for ventilating any coal mine or for an escapement shaft for any such mine.

The plaintiffs alleged that the defendant had willfully violated clause *c* of section 4 of the Mining act, which provides as follows: "(*c*) Flanges shall be attached to the sides of the drum of any engine used for hoisting men, with a clearance of not less than four inches when the whole rope is wound on the drum." Section 34 of the act in question contains the following definitions: "(*a*) In this

act the words 'mine' and 'coal mine,' used in their general sense, are intended to signify any and all parts of the property of a mining plant, on the surface or underground, which contributes, directly or indirectly, under one management, to the mining or handling of coal. * * * (c) The term 'shaft' means any vertical opening through the strata which is or may be used for purposes of ventilation or escapement, or for the hoisting or lowering of men and material in connection with the mining of coal."

The special findings of fact did not bring the property of defendant within the definition of a mine, and they expressly excluded the opening where the accident occurred from the definition of a shaft. The finding was that the opening was not used for the purposes of ventilation or escapement or for the hoisting or lowering of men and material in connection with the mining of coal. The engine and construction equipment at that opening were not a part of a mining plant which contributed, directly or indirectly, to the mining or handling of coal. By the general verdict the jury found the issue for the plaintiffs, while under the special findings no judgment could be rendered for plaintiffs. The case of *Spring Valley Coal Co.* v. *Greig,* 226 Ill. 511, has no tendency to sustain the action in this case or to establish the fact that this was a coal mine. In that case the mine was in full operation, and the engineer was killed while working with an engine used for the conveyance of coal from the top of the shaft to be sold to the retail trade.

The special findings of fact were inconsistent with the general verdict, and under the Practice act the court was required to render judgment in accordance with such special findings and did not err in so doing.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*