SECOND DISTRICT—MARCH, 1912.    147

Hakanson v. La Salle County Carbon Coal Co., 168 Ill. App. 147.

Elna Hakanson, Plaintiff in Error, v. La Salle County Carbon Coal Company, Defendant in Error.

Gen. No. 5550.

MINES AND MINERS—*when act does not apply.* This statute has no application until the actual mine is in operation and the mere fact that in the actual work preparatory to operation it is necessary that coal shall be removed does not render it an actual mine in operation.

Action in case for death caused by alleged wrongful act. Error to the Circuit Court of La Salle county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed March 13, 1912.

J. L. MURPHY and BROWNE & WILEY, for plaintiff in error.

McDOUGALL, CHAPMAN & BAYNE, for defendant in error.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

The La Salle County Carbon Coal Company, hereinafter called the company, was engaged in opening a new coal mine at Cedar Point in La Salle county. It had sunk two shafts to the third vein and was engaged in opening main entries and other work, as hereafter stated, when, on July 3, 1907, certain pipes were being moved from one side of the main shaft to another side, and several joints of said pipes became disconnected and fell down the shaft. Hakan Bengston and others were riding down the shaft on an open platform called a float. The pipe fell upon them and killed Bengston and another and injured others. Bengston was about 50 years of age and left no widow or descendants, but left a mother, Elna Hakanson, who brought this suit against the company to recover damages for the death of her son. The declaration alleged wilful violations

148    APPELLATE COURTS OF ILLINOIS.

Hakanson v. La Salle County Carbon Coal Co., 168 Ill. App. 147.

of the Mining Act. The first count charged that the company wilfully allowed Bengston to enter the mine to work therein, not under the direction of the mine manager, before all conditions had been made safe and while dangerous conditions existed in the mine and shaft. The second count charged that the company wilfully failed to cause the shaft and equipment to be examined by a qualified mine examiner and wilfully failed to have an examiner perform any of the duties prescribed by Section 18 of the Mining Act with reference to the main shaft, though there were dangerous conditions therein. The third count charged that the company wilfully failed to equip the cage with a substantial cover of boiler iron, but wilfully used a cage therein which had no cover to protect the men riding on it from falling objects. The proof showed that the dangerous conditions had not been made safe, and that there was no mine examiner, and that the cage upon which Bengston was going down the shaft was a mere platform with no covering over the men riding thereon. At the close of all the evidence the court excluded the evidence and gave an instruction directing the jury to find the company not guilty. The ground of the motion was that this was not a coal mine and that the mining law was not applicable thereto. A motion by Mrs. Hakanson for a new trial was denied and the company had a judgment for costs. She sues out this writ of error to review said judgment and the only question is whether Chapter 93 of the Revised Statutes, entitled "An Act to revise the laws in relation to coal mines and subjects relating thereto and providing for the health and safety of persons employed therein," is applicable to the conditions existing when Bengston was killed.

The company had driven two shafts down over 540 feet to the bottom of the third vein and had connected them at the bottom by a way intended as an air passage. These shafts were about 200 feet apart and one

was designed for the main shaft and the other for the escapement shaft. When they reached the coal they cut through it to the bottom of the vein, which was about 40 inches deep. They did not destroy this coal but took it to the top. They then cut a main entry east and another west and cut other entry ways north and south. They took out the vein of coal in cutting the entry and then took down enough earth and rock above the coal to make the entry about seven feet high. As far as practicable they took out the coal separately from the earth and rock and took the coal to the top. They then cut side entries at the end of each of these main entries and prepared places where rooms could be opened and where switch tracks could turn off from the main to the side entries. All the coal taken out in making these preparations for a coal mine, which could be kept separate from earth and rock, was taken to the top. This coal was taken up in either shaft and on small cages or on floats. This coal was not taken out and raised as a part of the operation of a coal mine, but in the work of preparing the plant to be operated as a coal mine. Light rails were put down in the entries on which to haul the coal to the bottom of the shaft. These were only one-half the weight intended to be used when the mine was ready for operation. The hoisting cages which were to be used when the mine was operated had not yet been installed and could not be installed until changes were made in the main shaft. A small blower had been inserted at the foot of the escapement shaft which was sufficient to cause a circulation of the air in the small area which had been opened, but it was wholly insufficient for the operation of a coal mine, and it was necessary, before operating the mine, that such entries should be cut as would enable the company to carry its ventilation system through all parts of the mine and to install a ventilating fan sufficient for that purpose. To do this it was necessary that various entries be cut through till they connected. The tower and the tipple house had

150    APPELLATE COURTS OF ILLINOIS.

Hakanson v. La Salle County Carbon Coal Co., 168 Ill. App. 147.

not been finished. The sump at the bottom of the main shaft and the timbering upon which the hoisting cage should rest at bottom and at top had not been completed. Track scales had to be inserted, and shaker screens and a hoisting engine and tracks in the tower. Many other things were required to be done before the company was ready to mine coal. It is entirely clear that this plant was not being operated as a coal mine and had not been operated as a coal mine when Bengston was killed. Though the digging of the shaft began a year before, still this was not a coal mine in operation. The company was merely doing the work preparatory to operating a coal mine. The question is whether this work, so done by "company men" working by the day is within the protection of the Mining Act.

Various sections of that Act refer to the work of preparing a shaft for operation. Thus section 2 (a) is "Any shaft in process of sinking, and any opening projected for the purpose of mining coal, shall be subject to the inspection of the State Inspector of Mines for the district in which said shaft or opening is located." Section 3 (a) fixes the time within which escapement shafts shall be completed after the hoisting of coal in the main shaft, and section 3 (b) limits the number of men who may be employed in completing the connections between the escapement shaft and the adjacent main. Section 34 (b) says that the word "excavation" shall signify any part of the mine excavated or being excavated. On the other hand, section 34 (a) defines the word "mine" and "coal mine," as used in that Act, to signify "any and all parts of the property of a mining plant, on the surface or underground, which contribute, directly or indirectly, under one management, to the mining or handling of coal." It is clear that the main features of the act relate to a coal mine previously prepared and ready for actual operation in the mining of coal, and the mere fact that in opening this mine there was coal which had to be

got out of the way and was therefore taken to the top and in common prudence was kept separate from earth and rock, so that when it reached the top it could be used or sold as coal, does not make the operation of taking this material out of the way the running of a coal mine. We consider this question practically disposed of by the opinion of the Supreme Court in Moore v. Dering Coal Company, 242 Ill. 84. There the decedent came to his death, as here, during the construction work preparatory to opening a coal mine, and it was held that the trial court properly entered a judgment for the defendant, whose liability was alleged to arise from a wilful violation of said Act in relation to Mines and Mining. The opening of the mine in that case had not proceeded as far as here and no coal had yet been removed, but we are of opinion that the principle is the same. As the plaintiff here based her cause of action solely upon an alleged violation of the Mining Act and as that Act, under the case above cited, is not applicable to construction work preparatory to opening a coal mine, the court properly directed a verdict for defendant.

The judgment is therefore affirmed.

*Affirmed.*