° ELNA HAKANSON, Appellant, vs. THE LASALLE COUNTY
CARBON COAL COMPANY, Appellee.

*Opinion filed October 16, 1914.*

MINES—*when question whether place of injury was a coal mine
should go to jury.* Whether the place of injury was a coal mine,
within the meaning of the Mines and Miners act, is a question for
the jury, where the evidence shows that the defendant, for about
six months prior to the accident, had employed more than twenty
miners in opening entries and roadways; that main entries were
driven east, west, north and south and entries opened off of them,
the total length of all entries and roadways opened being some
2000 feet; that from 1600 to 2400 tons of coal had been taken out
and that tracks and switches had been laid, although considerable
work remained to be done to complete the plant. (*Moore* v. *Der-
ing Coal Co.* 242 Ill. 84, distinguished.)

APPEAL from the Appellate Court for the Second Dis-
trict;—heard in that court on writ of error to the Circuit
Court of LaSalle county; the Hon. EDGAR ELDREDGE,
Judge, presiding.

J. L. MURPHY, and BROWNE & WILEY, for appellant.

McDOUGALL, CHAPMAN & BAYNE, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellant, Elna Hakanson, filed her declaration in the
circuit court of LaSalle county against appellee, the LaSalle
County Carbon Coal Company, to recover damages for the
death of her son, Hakan Bengtson, July 3, 1907, while in
the employ of appellee. The declaration contained three
counts, and based appellant's right of recovery on appellee's
willful failure to comply with the provisions of the Mines
and Miners act. The first count alleged appellee willfully
violated the law by allowing appellant's intestate, Hakan
Bengtson, to enter the mine and work therein before all
conditions had been made safe and while dangerous con-

ditions existed in said mine and shaft. The second count alleged appellee on the day of the accident willfully violated the statute by failing to cause the shaft and equipment to be examined by a duly qualified examiner and to perform the duties as required by the statute. The third count alleged appellee failed to equip said shaft, or the compartments thereof, with substantial cages, but willfully equipped the same with a cage not covered and with nothing to protect those riding thereon from falling objects, and that by reason of such failure of appellee, Bengtson, on July 3, 1907, while riding on such cage, was struck and killed by certain pipes of appellee falling and striking him. Appellee pleaded the general issue. A trial by jury was had, and at the close of all the evidence appellee filed a motion to direct a verdict of not guilty, on the ground that the evidence did not show that the place of injury was at that time a coal mine, and that the Mining act, upon which the cause of action was founded, had no application. This motion was sustained. An appeal was taken to the Appellate Court, where the judgment of the circuit court was affirmed. The cause comes to this court upon a certificate of importance granted by the Appellate Court.

Appellee, a corporation engaged in the business of mining coal, decided to sink shafts and open up a mine at Cedar Point. For that purpose it caused two shafts to be sunk to and through the vein of coal a depth of about 540 feet. One was for a hoisting shaft, the other an escapement shaft, and they were a little more than 200 feet apart. The sinking of the shafts was completed in January, 1907, and a force of between twenty and thirty men began opening entries or roadways and air-courses. Appellant's intestate was a coal miner employed in this line of work. While in the shaft on an open cage, or "float," for the purpose of assisting in the removal to one corner of the shaft of a column of pipe jointed together and 420 feet in length, the joints came apart and the pipe fell, instantly killing him.

It is not and could not reasonably be denied that if the Mines and Miners act applied the cause should have been submitted to the jury. The only question to be determined is whether there was any evidence tending to show the place of injury to have been at that time a coal mine within the purview and meaning of the Mining act. If there was, the motion to direct a verdict for appellee should have been denied and the issue submitted to the jury.

The Mines and Miners act provides in much detail for the construction, operation and inspection of coal mines. Paragraph (a) of section 2 of the act in force when the accident occurred, provided that "any shaft in process of sinking, and any opening projected for the purpose of mining coal, shall be subject to the inspection of the State inspector of mines." Paragraph (d) of section 2 required every hoisting shaft to be equipped with substantial cages fitted to guide-rails running from top to bottom, and furnished with suitable boiler-iron covers to protect persons riding thereon from falling objects. Section 18 of the act provided a mine examiner shall be required at all mines, and that he shall visit the mine before the men are permitted to enter it, examine the air current and "inspect all places where men are expected to pass or work." He shall post notices in working places where dangerous conditions exist and report the same to the mine manager, and shall make a daily record each morning of the condition of the mine as he found it, which record shall be preserved, and no one shall be allowed to enter the mine to work therein, except under the direction of the mine manager, until all conditions shall have been made safe. Section 24 required the operator of every mine where miners are paid by weight for their output, to provide scales for the weighing of the coal. Section 34 was as follows: "In this act the words 'mine' and 'coal mine,' used in their general sense, are intended to signify any and all parts of the property of a mining plant, on the surface or underground, which con-

tribute, directly or indirectly, under one management, to the mining or handling of coal. * * * The term 'shaft' means any vertical opening through the strata which is or may be used for purposes of ventilation or escapement, or for the hoisting or lowering of men and material in connection with the mining of coal."

The proof shows that for about six months prior to the accident which resulted in the death of Bengtson appellee kept employed underground more than twenty miners opening entries and roadways. Main entries were driven east, west, north and south, and other entries or roadways were opened off the main entries and some work done turning rooms off the last named entries. A roadway or air-course nine feet wide and seven feet high was opened from the main north entry to the escapement shaft. The total length of all entries and roadways opened was something more than 2000 feet. Tracks and switches were laid and the coal taken out was hauled in coal cars over these tracks to the bottom of the shaft by mules and hoisted to the top. Some of the coal was taken to the boiler-house and some of it was loaded on railroad cars and shipped away. Appellee's engineer estimated the coal hoisted before Bengtson's death at from 1600 to 2400 tons. This work was necessary before a larger force of men could be employed and the mine operated on a large scale. The entries were to be connected by roadways around a pillar 500 feet square surrounding the hoisting shaft, before a full force of men could be employed underground. Considerable work was done in opening entries or roadways around the pillar to connect with the main north, south, east and west entries, but this work had not been completed at the time of the accident. In opening the entries and roadways the work was done by coal miners, who took down the coal in the usual way, brushed and propped the roof, loaded the coal in cars, which were hauled by mules in charge of drivers employed for that purpose, to the shaft and hoisted in cages

to the top. The plant had not been completed to the extent that everything had been installed which was intended to be used when the underground work had progressed to the extent that a larger force of miners could be put to work in taking out coal, but the proof shows the equipment in use was sufficient for the work that was being done. It is true, a good deal of rock and other material had been taken down and hoisted, as well as coal; that scales had not been installed, and that the tipple as designed for use when the plant should be ready for operation upon a larger scale, with a larger force of men, had not been completed, but it seems to us the evidence certainly tended to show that the plant was being operated as a coal mine to such an extent as to bring it within the requirements of the Mines and Miners act.

This case is unlike *Moore* v. *Dering Coal Co.* 242 Ill. 84. In that case a main shaft had been sunk through the vein of coal. The material taken out, including the coal at the bottom of the shaft, was hoisted in a bucket. No coal was taken out except what was necessary in sinking the shaft. The death of the employee for which the suit was brought occurred in an air-shaft which was in process of being sunk but had not been completed. The men were engaged in blasting and taking out rock, which was hoisted in a bucket. The men went up and down this shaft in a bucket, which was hoisted and lowered by means of an engine and drum. Before coal had been reached in the air-shaft, and while two men were being let down into it by the bucket, the cable slipped off the drum and one of them fell and was instantly killed. The jury found, in answer to special interrogatories, that the opening was not used for ventilation or escapement or for the hoisting or lowering of men and material in connection with the mining of coal. A judgment rendered in favor of defendant on these special findings was affirmed by this court. We think there is a wide distinction between that case and the one before us.

In our opinion the case should have been submitted to the jury.

The judgments of the Appellate Court and circuit court are therefore reversed and the cause remanded to the circuit court.

*Reversed and remanded.*